J-S11006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MONROE M. MERRITT | : | |
| | : | |
| Appellant | : | No. 1091 EDA 2023 |

Appeal from the PCRA Order Entered April 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1217361-1976

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                 **FILED JUNE 27, 2024**

Monroe M. Merritt appeals *pro se* from the order that dismissed as untimely his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

Appellant robbed and murdered George Dunbar in 1976. In 1982, he was sentenced to a term of imprisonment for life without the possibility of parole. His judgment of sentence became final in 1987, and his efforts to obtain post-conviction relief filed in 1988, 1996, 2005, 2010, 2012, and 2016 merited no relief. *See Commonwealth v. Merritt*, 242 A.3d 437, 2020 WL 6806319, at *1-2 (Pa.Super. 2020) (non-precedential decision) (outlining case history).

_____

[*] Retired Senior Judge assigned to the Superior Court.

Of note to the instant appeal, the 2016 petition, as amended by counsel in 2018, alleged a claim of after-discovered evidence regarding one of his defense witnesses at trial, and asserted that it was premised upon newly-discovered facts that he could not have learned earlier with the exercise of due diligence. The PCRA court described Appellant's claim and its rejection of it as follows:

> Appellant claims that he discovered new evidence with respect to defense witness Edward Anderson. Appellant claims that he recently learned that Anderson was suffering from a serious head injury and was on medication when he testified and that this may well have affected his testimony. At trial, Anderson testified as a defense witness. On cross-examination, the Commonwealth asked Anderson, "You didn't know Appellant was on trial for murder and robbery before you took the witness stand?" to which Anderson replied, "Yeah, I knew it just before I came in the door, just when I was upstairs, when I talked to Appellant first and I asked him what you down for, right? And he said a murder-robbery. 'For that Dunbar dude I killed.'" On re-direct, Anderson recanted and denied that Appellant ever told him he killed Dunbar. Appellant claims that he always wondered why Anderson testified the way he did so he directed numerous friends [and] family members over the past [forty] years to find Anderson and ask him. He claims that his friend Michael Moore finally ran into Anderson walking down the street in February 2016 and that Anderson told him about two serious brain injuries[1] that he was suffering from at the time he testified at Appellant's trial. Appellant argues that this demonstrates that he exercised due diligence and that he could not have learned about it sooner, although he admits Anderson testified at his own sentencing in 1977 that he was suffering from brain trauma. Appellant indicates in his petition that after Moore talked to Anderson, he had his girlfriend obtain a copy of Anderson's notes of testimony from his sentencing and read that Anderson told his sentencing judge about his brain injuries and the medication he was on. Appellant argues that he could not have learned of this any sooner. This argument is without merit.

- 2 -

_____

[1] According to Anderson, he was attacked and beaten on the head with a hammer in 1974 and as a result had a steel plate put into his head. The following year, in 1975, he was stabbed above the eye and had to have a second steel plate installed.

Appellant is unable to invoke the newly[-]discovered [facts] exception because he cannot demonstrate that he could not have discovered Anderson's brain injury sooner with due diligence. The record shows Anderson testified at trial as a defense witness. Thus, Appellant and his attorney had the opportunity to interview and investigate Anderson and determined that he was a favorable witness for them. Appellant or his attorney should have been able to discern from their in–person interaction with Anderson whether he was under the influence of drugs or seemed disoriented due to his brain trauma. Even if they did not pick up on Anderson's brain injuries prior to or at trial, Anderson's sentencing transcript was a matter of public record. While matters of public record are not presumptively known to *pro se* litigants, counsel is presumed to be aware. ***Commonwealth v. Burton***, 158 A.3d 618, 638 (Pa. 2017). Appellant was represented by counsel at the time of Anderson's sentencing as well as several occasions thereafter during his appellate and prior collateral reviews. Appellant could have asked any of his attorneys to try to locate Anderson if he had in fact been "wondering" all these years about Anderson's reasons for testifying the way he did. . . . .

***Id***. at *5-6 (cleaned up) (quoting PCRA Court Opinion, 12/16/19, at 7–9).

On October 1, 2020, while Appellant's 2016 petition was pending on appeal, our Supreme Court decided ***Commonwealth v. Small***, 238 A.3d 1267 (2020), wholly disavowing the public records presumption regardless of the petitioner's representation status. Yet, more than six weeks after ***Small*** was handed down, this Court affirmed the dismissal of Appellant's petition based upon the public records presumption. ***See Merritt***, 2020 WL 6806319, at *6-7. Appellant, through counsel, filed a petition for allowance of appeal

- 3 -

with our Supreme Court alleging, *inter alia*, that this Court erred in applying the presumption in contravention of ***Small***. Nonetheless, our Supreme Court declined to disturb this Court's ruling. ***See Commonwealth v. Merritt***, 253 A.3d 679 (Pa. 2021) (*per curiam*) ("AND NOW, this 18th day of May, 2021, the Petition for Allowance of Appeal is DENIED.").

Appellant *pro se* filed the PCRA petition at issue in the instant appeal on August 16, 2021.[1] Therein, he reasserted his after-discovered evidence claim concerning Anderson's head injuries, maintaining that the 2016 petition originally raising the claim had satisfied a timeliness exception in light of ***Small***. He posited that the PCRA court had jurisdiction to consider the substantive claim because this Court's erroneous application of the law satisfied the governmental interference timeliness exception. ***See*** PCRA Petition, 8/16/21, at 13. Additionally, Appellant contended that *nunc pro tunc* reinstatement of the 2016 petition was appropriate in light of our High Court's ruling in ***Commonwealth v. Koehler***, 229 A.3d 915, 931 (Pa. 2020), that "if the petition is timely, *nunc pro tunc* relief is a deeply established means of

_____

[1] Thereafter, Appellant filed multiple supplements and amendments to the petition without obtaining leave of court to do so. Our Supreme Court has made it clear that leave of court must be sought and granted to file supplements and amendments to PCRA petitions, and any issues raised in unauthorized subsequent filings are waived. ***See Commonwealth v. Fears***, 250 A.3d 1180, 1194 (Pa. 2021). Accordingly, we limit our review to the August 16, 2021 petition.

remedying a breakdown in the prior process caused by an error of constitutional magnitude." *See* PCRA Petition, 8/16/21, at 14-15.

On March 3, 2023, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907.[2] The court indicated that the 2021 petition was untimely by several decades, that Appellant failed to allege or demonstrate how the government interfered with his ability to raise his substantive claim, and that, in any event, he "failed to establish due diligence, because any information regarding Mr. Anderson's medical condition would not be considered a public record, and thus, the *Small* case is inapplicable." Rule 907 Notice, 3/3/23, at unnumbered 2.

Appellant filed a response to the notice, reasserting the government interference and *Koehler* arguments for timeliness. *See* Response to Rule 907 Notice, 3/16/23, at 1-4. He further presented the same argument raised in his most recent petition for allowance of appeal, *i.e.* that this Court erred in relying on the public record presumption in affirming the dismissal of his 2016 petition.[3] *Id*. at 4-6. Appellant subsequently filed a motion to file an

---

[2] The certified record does not indicate the cause of the delay between the filing of the petition and the court's notice. However, we note that the case was ultimately assigned to and decided by a different judge than the one who ruled on the 2016 petition.

[3] Appellant also proffered some bases to overlook the facial untimeliness of the petition not asserted in the initial petition, but only in one of the unauthorized amendments or supplements. In particular, he asserted that the Commonwealth's failure to disclose the impeachment evidence of
*(Footnote Continued Next Page)*

addendum to his Rule 907 notice asserting that the PCRA court erred in not ruling on a motion for discovery that Appellant had filed amidst his various supplements and amendments and misconstrued his claim as pertaining to Anderson's medical records rather than to the December 1, 1977 sentencing transcript in Anderson's case. **See** Motion to File Addendum, 3/30/23, at 1.

Without ruling on the motion to file an addendum or the underlying motion for discovery, the PCRA court dismissed Appellant's petition as untimely by order of April 14, 2023. Appellant filed a timely notice of appeal, and the PCRA court supplied an opinion in support of its ruling without directing Appellant to file a Pa.R.A.P. 1925(b) statement.

Appellant presents the following questions for our review:

I.    Did the PCRA court err when it failed to address [the] claim that [Appellant] is entitled to PCRA relief *nunc pro tunc*, because during appellate process appellate courts did not apply new rule of law announced in **Commonwealth v. Small**, 238 A.3d 1267 (Pa. 2020)[,] to [Appellant]'s case, and failed to address assertion that appellate court's failure to apply **Small** to [his] case amounts to abuse of discretion, and government interference resulting in a breakdown in the operation of the court, violating [his] Fourteenth Amendment right to due process of law?

_____

Anderson's brain injuries despite having the transcript from Anderson's case between the time of Appellant's trial and sentencing was a violation of **Brady v. Maryland**, 373 U.S. 83 (1960), and satisfied the governmental interference exception. **See** Response to Rule 907 Notice, 3/16/23, at 7-10. Finally, he argued that our Supreme Court's decision in **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), allowed him to assert a claim that prior PCRA counsel was ineffective in failing to raise the **Brady** claim in connection with the 2016 petition. **See** Response to Rule 907 Notice, 3/16/23, at 10-11.

II. Did the PCRA court err in dismissing [Appellant]'s petition for [PCRA] relief *nunc pro tunc*, when it held that [Appellant] failed to allege or demonstrate the government withheld, interfered with, or in any way prohibited [him] from discovering information concerning witnesses brain injuries?

III. Did the prosecution's failure to disclose a judicial finding which took place just [sixteen] days after the conclusion of [Appellant]'s trial, in a separate, unrelated criminal proceeding, concerning the brain injuries and resulting medical condition of defense witness Edward Anderson, violate the prosecution's obligation to disclose exculpatory material and impeachment evidence under **Brady v. Maryland**, 373 U.S. 83 (1963)?

IV. Did the PCRA court err in dismissing [Appellant]'s petition for [PCRA] relief *nunc pro tunc*, when it failed to address [his] alternative ineffective assistance of counsel claim, that prior PCRA counsel was ineffective for failure to raise and preserve [the] **Brady** claim?

V. Did the PCRA court err in dismissing [Appellant]'s petition for [PCRA] relief *nunc pro tunc*, when it failed to rule on and address [his] motion for [PCRA] discovery, and on motion for appointment of counsel to assist in that discovery?

Appellant's brief at 2-3.

We begin with an examination of the applicable legal principles. "In general, we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." **Commonwealth v. Howard**, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up).

As to legal questions, we apply a *de novo* standard of review to the PCRA court's legal conclusions, and this Court may affirm a PCRA court's order on any legal basis. As to factual questions, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party in the lower court. Great deference is granted to

- 7 -

the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

*Id*. (cleaned up). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant's first three issues concern the PCRA court's conclusion that it lacked jurisdiction to consider his untimely petition. It is well-settled "that the timeliness of a PCRA petition is jurisdictional and that if the petition is untimely, courts lack jurisdiction over the petition and cannot grant relief." ***Commonwealth v. Fantauzzi***, 275 A.3d 986, 994 (Pa.Super. 2022). Any PCRA petition must be filed within one year of the date that the underlying judgment of sentence became final unless the petitioner pleads and offers to prove one of the enumerated timeliness exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Further, a petition invoking a timeliness exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Reinstatement of PCRA rights *nunc pro tunc* is a remedy available when a PCRA claim is successfully prosecuted. ***See***, ***e.g.***, ***Koehler***, 229 A.3d at 931-32 (collecting cases in which *nunc pro tunc* relief was granted in connection with timely PCRA petitions). However, in order to obtain that relief, the petitioner must first establish the PCRA court's jurisdiction to grant it by pleading and proving one of the statutorily-enumerated timeliness exceptions. ***See***, ***e.g.***, ***Commonwealth v. Kennedy***, 266 A.3d 1128, 1135 (Pa.Super. 2021) ("Kennedy was presumably entitled to have his collateral appeal rights reinstated *nunc pro tunc* when his first collateral appeal was dismissed . . . . However, because Kennedy's current petition is untimely, in order to establish jurisdiction under the PCRA, he must now plead and prove a PCRA timeliness exception."). There are no *ad hoc* equitable exceptions to the PCRA's jurisdictional time bar. ***See***, ***e.g.***, ***Commonwealth v. Watts***, 23 A.3d 980, 983 (Pa. 2011).

Here, there is no dispute that Appellant's 2021 PCRA petition was facially untimely. He attempted to establish jurisdiction to consider the merits of his substantive claim concerning Anderson's brain injury by invoking the § 9545(b)(1)(i) governmental interference exception. Plainly, Appellant has had actual knowledge of Anderson's brain injury despite any interference by the government at least since he filed his 2016 PCRA petition seeking relief on the same substantive after-discovered evidence claim. Accordingly, neither the prosecution nor any court of this Commonwealth interfered with

his ability to present his underlying claim, or his *Brady* claim, more than one year before he reasserted it in the instant 2021 petition.[4] The exception cannot supply jurisdiction for a court to reconsider the claim *nunc pro tunc* in these proceedings.

Nor does this Court's clear legal error in failing to recognize that *Small* had eliminated the public records presumption constitute a breakdown in court processes that warrants the grant of *nunc pro tunc* reconsideration of the dismissal of Appellant's 2016 petition. Breakdowns in court operations that have warranted relief involved instances in which the party's ability to obtain appellate review was affected by the failure of court officials to provide notice of a filing or the provision of misinformation that, when followed by the party, rendered an appeal untimely. *See, e.g.*, *Commonwealth v. Stansbury*, 219 A.3d 157, 160 (Pa.Super. 2019) (collecting cases); *Commonwealth v. Blackwell*, 936 A.2d 497, 502 (Pa.Super. 2007) ("The PCRA court's erroneous notification to Appellant that PCRA counsel had withdrawn amounted to governmental interference.").

_____

[4] As noted above, Appellant's *Brady* claim, asserting that the Commonwealth improperly withheld the information about Anderson's brain injury that it gleaned from Anderson's sentencing proceedings, was not pled in his 2021 petition, but rather in one of his unauthorized supplements. Hence, it was never properly before the PCRA court. In any event, he obviously could have raised that claim in the 2016 petition since he discovered the asserted *Brady* violation at that time.

- 10 -

On the other hand, when a party has obtained appellate review but believes that this Court erred in making its ruling, the remedy is to seek reargument in this Court and/or review by the Pennsylvania Supreme Court to correct the error. Appellant sought that remedy, but our Supreme Court was not moved to vacate our application of overruled law and remand for consideration of the appeal pursuant to *Small*.[5] Thus, Appellant suffered no wholesale deprivation of access to appellate review as a result of this Court's error.[6] *Cf. Commonwealth v. Peterson*, 192 A.3d 1123, 1132 (Pa. 2018) (providing a PCRA timeliness exception may be satisfied when counsel's ineffectiveness completely foreclosed review of the petitioner's collateral claims).

Of note, our Supreme Court did not specify its reason for denying Appellant's petition for allowance of appeal. Perhaps it was because the error

---

[5] *Cf.*, *e.g.*, *In re Animal Outlook*, 298 A.3d 37 (Pa. 2023) (*per curiam*) ("AND NOW, this 16th day of May, 2023, the Petition for Allowance of Appeal is GRANTED, the Superior Court's order is VACATED, and the matter is REMANDED for the trial court to apply *In re Ajaj*, 288 A.3d 94 ([Pa.] 2023) [(abandoning prior standard of review for the disapproval of private criminal complaints and establishing a new one)].").

[6] The Commonwealth asserts in its brief that this Court's erroneous application of the law arguably qualified for the governmental interference exception because it was akin to the provision of misinformation that thwarted the presentation of a claim, citing *Commonwealth v. Blackwell*, 936 A.2d 497, 502 (Pa.Super. 2007). *See* Commonwealth's brief at 19-20. If that were the law, petitioners could engage in an endless cycle of invoking the exception to relitigate each successive ruling in their cases by classifying it as governmental interference. Rather, we reject the Commonwealth's position for the reasons stated above.

- 11 -

was manifestly harmless. As the PCRA court observed, Appellant never established that he exercised due diligence in discovering the facts upon which his identical 2016 and 2021 substantive claim is based, namely that Anderson, a witness whom Appellant called to testify for the defense during his 1977 trial, experienced confusion from the brain injuries he sustained in 1974 and 1975 and the medication he took to treat them. While the 1977 sentencing transcript Appellant ultimately uncovered in 2016 was the source from which he discovered those facts, the existence of the transcript was not itself a fact upon which his claim rested.

Indeed, as recounted above, the fact that the transcript was in the public record four years before Appellant was sentenced was only an alternative basis upon which the PCRA court rejected Appellant's claim of due diligence. Its primary basis was that, since Anderson testified at trial as a defense witness:

> Appellant and his attorney had the opportunity to interview and investigate Anderson and determined that he was a favorable witness for them. Appellant or his attorney should have been able to discern from their in–person interaction with Anderson whether he was under the influence of drugs or seemed disoriented due to his brain trauma.

**Merritt**, 2020 WL 6806319, at *6 (cleaned up).

In affirming the PCRA court's ruling, we were persuaded by the Commonwealth's observation that "Appellant admitted he was confused by Anderson's testimony at trial, and Appellant attempted to discover, from 1978 to 1983, why Anderson testified as he did." *Id*. The PCRA court concluded

- 12 -

that, given his access to Anderson and ample motivation to investigate his unexpected trial testimony, the exercise of due diligence could have uncovered the fact of Anderson's brain injuries and his treatment therefor, whether from the sentencing transcript or another source, decades before Appellant filed the 2016 petition. Thus, this Court simply had no basis to hold that the PCRA court erred and that relief was due even if we had put aside fact that there was a public record that contained the facts at issue.

For these reasons, Appellant has not convinced us that the PCRA court committed an error of law or abuse of discretion in holding that Appellant failed to plead facts which, if proven at a hearing, would establish that the instant PCRA petition satisfied any cognizable timeliness exception. Indeed, even if this were deemed a case "involving unique circumstances embodying manifest error or irregularity in the chain of previous litigation,"[7] that somehow would render the issue available for review, it would not achieve a different result for Appellant.

Nor do we conclude that either of Appellant's remaining issues merits relief. First, he assails the PCRA court's failure to rule upon his motion for discovery which requested the following:

> A.     Disclosure and inspection of all records, reports, notes or memoranda, including raw data, resulting from any and all competence tests conducted in the Philadelphia Crime Lab Ballistics Laboratory for the years 1976 and 1977.

_____

[7] **Commonwealth v. Cruz**, 851 A.2d 870, 877 (Pa. 2004).

B.      Copies of any and all ballistics reports resulting from any and all ballistic tests performed on the bullet projectiles in [Appellant]'s case in possession of the Philadelphia District Attorney's Office files concerning [Appellant]'s case, of the files in the possession of the Philadelphia Police Department concerning [Appellant]'s case, and of the files in possession of the Philadelphia Police Department Archives concerning [Appellant]'s case.

.   .   .   .

[C]. Access to the District Attorney's homicide file on [Appellant]'s case for any additional identifying information on juror #2, John F. Wilson, that would definitively determine which of the two John F. Wilsons is the person who has, or does not have, a criminal record.

Motion for Discovery, 4/11/22, at 4-6.

The Rules of Criminal Procedure provide in pertinent part that "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). Appellant contends that, because it is "certainly possible" that discovery could yield helpful results, he established exceptional circumstances. *See* Motion for Discovery, 4/11/22, at 4.

We disagree. Appellant's motion was a classic fishing expedition, not a request founded upon the requisite exceptional circumstances. ***Accord Commonwealth v. Carson***, 913 A.2d 220, 261 (Pa. 2006) (holding that a general request for PCRA discovery upon speculation that the requested materials will uncover exculpatory evidence is insufficient even to establish the more lenient good cause standard applicable in connection with the first,

counseled petition filed in death penalty cases).  Hence, we discern no cause to mandate that the PCRA court enter an order formally rejecting the discovery request.

Finally, Appellant's **Bradley** claim that his counsel for the 2016 petition was ineffective in not asserting the governmental interference exception is not properly raised in these proceedings.  "Nothing in **Bradley** creates a right to file a second PCRA petition outside the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right."  **Commonwealth v. Stahl**, 292 A.3d 1130, 1136 (Pa.Super. 2023).  "To the contrary, our Supreme Court in **Bradley** unambiguously rejected the filing of a successive untimely PCRA petition as a permissible method of vindicating the right to effective representation by PCRA counsel."  **Id**. (citation omitted).

In sum, Appellant has not met his burden of establishing that the PCRA court erred and that relief is due.  Accordingly, we affirm the order dismissing his 2021 petition as untimely filed.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/27/2024

- 15 -